591 S.E.2d 182

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Jack W. HINCHMAN, Defendant Below, Appellee.**

**No. 31153.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 28, 2003.

Decided Nov. 24, 2003.

**628**

Darrell V. McGraw, Attorney General, Dawn E. Warfield, Assistant Attorney General, Charleston, for the Appellee.

I. Franklin Hartman, III, Hartman & Hartman, PLLC, Buckhannon, for the Appellant.

PER CURIAM.

This is an appeal by Jack W. Hinchman (hereinafter "Appellant") from an April 24, 2002, order of the Circuit Court of Upshur County sentencing the Appellant to two consecutive terms of one to five years each for obtaining money by a worthless check. On appeal, the Appellant contends that he was denied his right to a speedy trial and that trial counsel was ineffective. Based upon a thorough examination of the arguments of counsel, the briefs, and the record in this matter, we affirm in part, reverse in part, and remand for entry of an order based upon the agreement between the State and the Appellant regarding credit for time served.

I. Factual and Procedural History

On February 18, 1992, a warrant was issued for the Appellant's arrest based upon worthless checks allegedly written by the Appellant. The Appellant was thereafter arrested on November 2, 1995. While a complete explanation for the three and one-half year delay is not apparent from the record, the record does reveal that the Appellant was incarcerated in the Barbour County Jail on another worthless check conviction during some of that period of delay.[1]

The Appellant entered into a plea agreement on March 29, 1996, pleading nolo contendere to two counts of obtaining money by a worthless check, in violation of West Virginia Code § 61-3-39 (1994) (Repl.Vol.2000). On April 4, 1996, the Appellant was sentenced to two consecutive terms of one to five years. The lower court suspended that sentence, and the Appellant was placed on probation for five years and ordered to pay restitution in the amount of $1,281.00.

On June 24, 1998, a petition to revoke probation was filed against the Appellant, based upon violations of probation including failure to appear, failure to pay assessed court costs and restitution, a driving under the influence charge, and a driving on a suspended license charge. Probation was revoked on June 15, 1999, and the Appellant was resentenced on June 25, 1999, to one to five years on each count, to run consecutively. This Court refused the Appellant's petition for a writ of habeas corpus[2] but directed the lower court to resentence the Appellant to renew the appeal period on the underlying felony convictions. Thus, on April 24, 2002, the lower court resentenced the Appellant to one to five years on each count, to run consecutively. It is from that order that the Appellant now appeals, contending that he was denied the right to a speedy trial, that he was denied credit for time served, and that his trial counsel was ineffective.

II. Standard of Review

The Appellant's assignment of error regarding denial of the right to a speedy trial is governed by the following standard of review: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review." Syl. Pt. 1, Chrystal R.M. v. Charlie A.L., 194 W.Va. 138, 459 S.E.2d 415 (1995). Syllabus point two of Walker v. West Virginia Ethics Com-

1. The Appellant's criminal record indicates that during the period of delay, he was in Mason County, West Virginia; Gallia County, Ohio; Oakland, Maryland; and Kingwood, West Virginia, between February 1992 and November 1995.

2. An omnibus evidentiary hearing was conducted on April 5, 2001, and the lower court denied habeas relief on all grounds, including the issues argued in this appeal regarding ineffective assistance of counsel, denial of right to a speedy trial, and denial of credit for time served.

*mission,* 201 W.Va. 108, 492 S.E.2d 167 (1997), also explained as follows.

In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

█ With regard to the Appellant's assertion of the claim of ineffective assistance of counsel, we explained the following standard of review in *State ex rel. Daniel v. Legursky,* 195 W.Va. 314, 465 S.E.2d 416 (1995), "[a]n ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions *de novo.*" 195 W.Va. at 320, 465 S.E.2d at 422.

### III. Discussion

█ The Appellant contends that he was prejudiced by the almost four-year delay between the alleged crime and the indictment in this case. The Appellant's assertions can be segregated into two general categories: first, he maintains that his Sixth Amendment right to a speedy trial was violated; second, he maintains that the Fifth Amendment due process standard was violated by pre-indictment delay. In syllabus point two of *State v. Drachman,* 178 W.Va. 207, 358 S.E.2d 603 (1987), this Court recognized this distinction between Fifth and Sixth Amendment claims, as follows:

In those situations where there has been no arrest or indictment, the Sixth Amendment right to a speedy trial is not

implicated. Yet, the prosecution may have substantially delayed the institution of criminal proceedings causing prejudice to the defendant by way of loss of witnesses or other evidence. In this situation, the Fifth Amendment due process standard is utilized.

We examine these two categories separately below.

### A. Right to Speedy Trial

█ This Court has consistently held that "[t]he constitutional right to a speedy trial *does not arise until the defendant is charged or arrested.*" *Hundley v. Ashworth,* *181 W.Va.* 379, 381, 382 S.E.2d 573, 575 (1989) (citing *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)). As this Court explained in syllabus point one of *Drachman,* "[t]he Sixth Amendment speedy trial right begins with the actual arrest of the defendant and will also be initiated where there has been no arrest, but formal charges have been brought by way of an indictment or information." 178 W.Va. at 208, 358 S.E.2d at 604.

█ Guiding our inquiry into speedy trial violations, we explained in syllabus point two of *State v. Carrico,* 189 W.Va. 40, 427 S.E.2d 474 (1993), that once the indictment has been returned, " '[i]t is the three-term rule, *W. Va. Code,* 62–3–21 [1959], which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia *Constitution.*' Syl. Pt. 1, *Good v. Handlan,* 176 W.Va. 145, 342 S.E.2d 111 (1986)." West Virginia Code § 62–3–21 (1959) (Repl.Vol.2000) essentially provides that an individual indicted for a crime must be tried within three terms of the indictment.[3]

---

**3.** The complete text of West Virginia Code § 62–3–21 is as follows:

Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or

prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict; and every person charged with a misdemeanor before a justice of the peace [magistrate], city police judge, or any other inferior tribunal, and who has therein been found guilty and has appealed his conviction of guilt and sentence to a court of record, shall be forever discharged from

As recognized by this Court in *Carrico*, however, the statutory three-term rule is not the only mechanism for assessing speedy trial standards. As *Carrico* explained,

> [I]n other cases discussing the right to a speedy trial we have focused on the standards enunciated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):
>
> > A determination of whether a defendant has been denied a trial without unreasonable delay requires consideration of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. The balancing of the conduct of the defendant against the conduct of the State should be made on a case-by-case basis and no one factor is either necessary or sufficient to support a finding that the defendant has been denied a speedy trial.
>
> Syl. pt. 2, *State v. Foddrell*, 171 W.Va. 54, 297 S.E.2d 829 (1982).

189 W.Va. at 44, 427 S.E.2d at 478. The *Carrico* Court acknowledged that West Virginia's three term rule provides standards which "meet or exceed the *Barker* standards" *Id.*, 427 S.E.2d at 478. The *Carrico* Court concluded that "if a conviction is validly obtained within the three-term rule, *W.Va. Code* 62–3–21 [1959], then that conviction is presumptively constitutional under the speedy trial right guaranteed by the *Constitution of the United States*, Amendment VI, and *W.Va. Constitution*, Article III, § 14." *Id.*, 427 S.E.2d at 478.

In the present case, as recited above, warrants for the Appellant's arrest were issued in February 1992, but he was not arrested until November 2, 1995, after which he was bound over to await the action of the grand jury. He was thereafter indicted in January 1996 and convicted during that same term of court. We consequently find no violation of the statutory measuring stick for speedy trial issues, West Virginia Code § 62–3–21, based

upon the fact that the delay in this matter occurred between the crime and the arrest. Further, we likewise find no violation of the speedy trial standards enumerated by the syllabus point two of *Foddrell.*

### B. Pre-indictment Delay

The Appellant's most compelling assertion is that his due process rights were violated by the nearly four-year pre-indictment delay between the issuance of the warrants and the indictment. Regarding pre-indictment delay, the United States Supreme Court, in *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), explained as follows:

> [T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the preindictment delay in this case caused substantial prejudice to the [defendant's] right to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused.

404 U.S. at 324, 92 S.Ct. 455.. This Court mirrored the *Marion* reasoning in syllabus point two of *Hundley*, as follows:

> The Due Process Clause of the Fifth Amendment to the United States Constitution and Article III, Section 10 of the West Virginia Constitution require the dismissal of an indictment, even if it is brought within the statute of limitations, if the defendant can prove that the State's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense.

181 W.Va. at 380, 382 S.E.2d at 574.

In evaluating a Fifth Amendment pre-indictment delay claim, this Court has observed that extreme delays may be presumed prejudicial to the defendant. In syllabus point one of *State ex rel. Leonard v. Hey*, 269 S.E.2d 394 (1980), for instance, this Court stated:

> A delay of eleven years between the commission of a crime and the arrest or

---

further prosecution for the offense set forth in the warrant against him, if after his having appealed such conviction and sentence, there be three regular terms of such court without a

trial, unless the failure to try him was for one of the causes hereinabove set forth relating to proceedings on indictment.

indictment of a defendant, his location and identification having been known throughout the period, is presumptively prejudicial to the defendant and violates his right to due process of law, U.S. Const.Amend. XIV, and W.Va. Const. art. 3, § 10. The presumption is rebuttable by the government.

269 S.E.2d at 394. Where the delay is not *prima facie* excessive, however, the burden of demonstrating prejudice is upon the defendant, as this Court explained in syllabus point one of *State v. Richey,* 171 W.Va. 342, 298 S.E.2d 879 (1982): "The general rule is that where there is a delay between the commission of the crime and the return of the indictment or the arrest of the defendant, the burden rests initially upon the defendant to demonstrate how such delay has prejudiced his case if such delay is not *prima facie* excessive."

In *Hundley,* this Court examined the due process rights of the defendant and held that an eight-year delay between the report of alleged child abuse and the defendant's indictment did not violate due process. 181 W.Va. at 383, 382 S.E.2d at 577. The *Hundley* Court examined the reasoning employed by this Court in *Leonard,* noting that the *Leonard* Court utilized a "burden-shifting mechanism by finding the delay to be presumptively prejudicial and requiring the State to rebut the presumption of prejudice." 181 W.Va. at 382, 382 S.E.2d at 576. The *Hundley* Court specified, however, that such an analysis was "limited to the situation where the prosecutor knew of the defendant's 'location and identification ... throughout the period.'" *Id.,* 382 S.E.2d at 576, quoting Syl. Pt. 1, *Leonard,* 269 S.E.2d at 394. The *Hundley* Court explained:

Furthermore, even in those limited situations where *Leonard* does apply, the State in rebutting the prejudice need only show that the delay was not deliberately designed to gain a tactical advantage over the defendant. Once this is shown, the

defendant is not entitled to prevail on a motion to dismiss the indictment under a due process claim for delay.

181 W.Va. at 383, 382 S.E.2d at 576–77; *see also State v. Davis,* 205 W.Va. 569, 579, 519 S.E.2d 852, 862 (1999) ("If the State is able to make such a showing, the delay in obtaining the indictment does not violate federal or state due process").

■ In the present case, this Court does not believe that the delay between the issuance of the warrants and the Appellant's arrest gives rise to the presumption of prejudice, based upon a *prima facie* excessive delay, as referenced in *Leonard.* As this Court stated in syllabus point two of *Leonard,* "[t]he effects of less gross delays upon a defendant's due process rights must be determined by a trial court by weighing the reasons for delay against the impact of the delay upon the defendant's ability to defend himself." 269 S.E.2d at 394.

In examining the reasons for the delay,[4] the record reveals that the Appellant was incarcerated on other worthless check charges during part of the period of delay. Subsequent to his release from the Barbour County Jail, it appears that the Appellant was in three different counties and at least two other states. When the Appellant returned to Upshur County, the State arrested him and presented the indictment to the grand jury. The record is devoid of any evidence that the State's delay in bringing the indictment was a deliberate device designed to gain advantage over the Appellant. Moreover, the Appellant has not presented convincing evidence indicating that the delay actually prejudiced his defense.[5] *See State ex rel. Henderson v. Hey,* 188 W.Va. 396, 424 S.E.2d 741 (1992) (holding that delay of twenty-three months was not presumptively prejudicial and defendant had not demonstrated prejudice); *State v. Petrice,* 183 W.Va. 695, 398 S.E.2d 521 (1990) (finding that two and one-half year delay did not require dismissal

---

4. In an evaluation of the reasons for the delay, the factors enumerated in Foddrell are instructive, despite the fact that the *Foddrell* factors were technically applied in a Sixth Amendment speedy trial case.

5. The Appellant did indicate that the delay removed the potential for concurrent sentencing between his older crime and one presently under consideration. We do not find that such issue warrants dismissal of an indictment for delay.

of indictment).[6] Accordingly, we conclude that the Appellant has not demonstrated a violation of his due process rights occasioned by the delay between the original accusation of criminal conduct and his trial in this cause.

### C. Ineffective Assistance of Counsel

 The Appellant's claim of ineffective assistance of counsel is governed by particular standards designed for such a specialized claim. We thoroughly explained the standard for ineffective assistance of counsel in *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). We stated that in order to prevail on an ineffective assistance of counsel claim, the petitioner must show both deficient performance and prejudice. Specifically, syllabus point five of *Miller* explained:

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syllabus point six of *Miller* continued:

In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

In syllabus point four of *Daniel*, this Court explained as follows:

In determining whether counsel's conduct falls within the broad range of professionally acceptable conduct, this Court will not view counsel's conduct through

the lens of hindsight. Courts are to avoid the use of hindsight to elevate a possible mistake into a deficiency of constitutional proportion. Rather, under the rule of contemporary assessment, an attorney's actions must be examined according to what was known and reasonable at the time the attorney made his or her choices.

195 W.Va. at 317, 465 S.E.2d at 419.

The Appellant's assertions of ineffective assistance of counsel in the present case are almost identical to the claims he asserted in a prior habeas corpus proceeding. We find that such issues were fully developed in the prior habeas proceeding, and we found no merit in his claims at that time. We further note that although the Appellant's brief contains an assignment of error regarding alleged ineffective assistance of counsel at the trial court level, the Appellant's counsel on appeal did not strenuously assert such contention during oral argument before this Court and, in fact, appeared to concede that the Appellant received fair and adequate legal counsel regarding the distinction between concurrent and consecutive sentencing, as well as the effect of failure to comply with the requirements of probation. Even in the absence of counsel's concession of that issue, this Court concludes that the issues raised by the Appellant regarding any defects in the performance of trial counsel are not meritorious. The record clearly reveals the Appellant's complete understanding of the terms of his plea, the distinction between concurrent and consecutive sentencing, and the penalty for failure to comply with the terms of his probation.

### D. Credit for Time Served

Based upon representations that the Appellant and the State have agreed on the issue of credit for time served, we reverse the findings of the lower court regarding credit for time served and instruct the lower court *to enter an order on remand based upon the agreed calculation of the Appellant and the State.*

**6.** Based upon our findings regarding the Appellant's speedy trial rights and pre-indictment delay, we do not address the State's contention that

the Appellant waived his speedy trial or pre-indictment delay claims by entering his plea to the indictment.

### E. Conclusion

Based upon the foregoing, we otherwise affirm the determinations of the lower court, and we remand this case for the sole purpose of entering the order referenced above regarding the adjustment for credit for time served.

Affirmed in part, reversed in part, and remanded.